A. H. WOODS THEATRE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11067. Promulgated June 25, 1928.

*David J. Greenberg, Esq.*, for the petitioner.
*James A. O'Callaghan, Esq.*, for the respondent.

830

MARQUETTE: The first question raised by the record in this proceeding is, what was the value at the date of acquisition, of the leasehold which the petitioner acquired from Woods in January, 1917? The petitioner contends that the leasehold in question had a value at that time of $300,000; that it issued in exchange therefor its stock of the par value of $300,000, and that it is entitled to include the leasehold in its invested capital at that amount, and to compute the annual allowances for exhaustion on that basis.

Upon consideration of the evidence we are of the opinion that it sustains the petitioner's contention. The transaction between Woods and the trustees of the Field Estate, whereby Woods acquired the leasehold which we are considering, was not the ordinary transaction consummated at arm's length by the owner of property desiring to lease it and a prospective lessee. The evidence shows that Woods, who desired to build a theatre in Chicago, found a suitable site consisting of two pieces of property owned by two different estates. Not being in position to finance the acquisition of the property himself, he took the matter up with the Field Estate through a broker. The Field Estate at that time was seeking long-term investments at a comparatively low rate of return. Upon the representations of the broker that the two pieces of property could be acquired at a reasonable price, and merged into a single fee and leased to Woods for a long term at a fair return on the purchase price, the Field Estate purchased the property and did lease it to Woods. One of the trustees of the Field Estate testified that the rental value of the combined tracts, or parcels of property, was at least $75,000 per year and that Woods was able to obtain the leasehold for the consideration stated in the lease only on account of the exceptional circumstances surrounding the transaction. The Field Estate was in reality only financing Woods in the enterprise. Several other witnesses who were familiar with the property covered by the lease, and with other property in the vicinity, also testified that it had a rental value of from $72,000 to $75,000 per year, and that the leasehold was actually worth at least $300,000 in January, 1917. One of these witnesses offered Woods $300,000 for the lease early in the year 1917, but Woods refused to accept it. In 1923 the witness purchased the lease and the building on the property for $1,000,000, and he testified that at that time he considered the leasehold alone worth more than $400,000. We are of the opinion that the leasehold was worth at least $300,000 when it was acquired by the petitioner.

Leaseholds are tangible property under the Revenue Acts of 1918 and 1921. The leasehold under consideration having been actually worth at least $300,000 when acquired by the petitioner, and the petitioner having issued its capital stock in the amount of $300,000 therefor, it is entitled to include the lease in its invested capital at that amount and to deduct annually an aliquot part thereof for the exhaustion of the lease. *Roth Hotel Co.*, 1 B. T. A. 1111; *Hotel De France Co.*, 1 B. T. A. 28; *Grosvenor Atterbury*, 1 B. T. A. 169.

As to the rate which should be used in computing the annual allowance for the depreciation of the petitioner's building, we are of the opinion that the evidence produced is not sufficient to warrant us in disturbing the respondent's determination. The building was well constructed of steel, concrete and brick, and therefore not subject to rapid deterioration. Owing to changes in styles of theatre construction, the theatre part of the building may become out of date in twenty years, and if the taxes on the land continue to increase, the ten-story office building may become less profitable, but it is also quite possible that the office might be made to return a higher rental and the theatre conducted at some, though reduced, profit, even though it be somewhat out of date. Moreover, the theatre might be remodeled. There is no evidence before us on either of these points. We are not informed as to the amount of income the building has so far earned, or whether it is increasing, decreasing, or remaining stationary in its ratio to taxes and operating expenses. Upon the state of the record as to this point, we think that the respondent's determination should be approved, and we so hold.

No evidence was introduced by the petitioner in support of the other assignment of error.

*Judgment will be entered under Rule 50.*